UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MARTIN COUTNY DIVISION

KALIL DESIGN CONCEPTS, LLC,                    Case No.
a Florida Limited Liability Company,

        Plaintiff(s),

v.

THOMAS E. POWNALL, an Individual,
and PRESTIGE COMPOSITES, INC.,
a South Carolina Corporation,

        Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, KALIL DESIGN CONCEPTS, LLC, a Florida Limited

Liability Company, (hereinafter referred to as "Kalil" or "Plaintiff"), by and through its

undersigned counsel, files this Complaint against Defendants, THOMAS E. POWNALL (hereinafter

referred to as "Pownall"), an Individual, and PRESTIGE COMPOSITES, INC., a South Carolina

Corporation (hereinafter referred to as "Prestige"), (hereinafter collectively referred to as the

"Defendants") and state as follows:

## JURISDICTION AND VENUE

1.     Federal jurisdiction is founded on diversity of citizenship, 28 U.S.C. §1332 and the

right to declaratory relief pursuant to Title 28 U.S.C. § 2201.

2.     Venue is proper as this Court has general jurisdiction pursuant to 28 U.S.C.

§1391(b)(2). Specific jurisdiction exists as all the Defendants have established minimum contacts

with Martin County, Florida in one or more of the following ways:  (a) traveling to Florida to

preview the Plaintiffs' business operations located in Martin County, Florida; (b) being shown

Plaintiffs' proprietary products, materials, molds, and plugs on location in Martin County, Florida; (c) negotiating the specific terms of the contract at the Plaintiffs' offices and headquarters in Martin County, Florida; and (d) inflicting damages that have occurred and continue to occur in Martin County, Florida.

3.      This Court has subject matter jurisdiction over this action for multiple independent reasons: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331 and (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332.

4.      Additionally, the amount in controversy exceeds $75,000.00, exclusive of attorney's fees, interest, and costs.

5.      Finally, the parties contractually agreed to jurisdiction and venue in the State of Florida.  See Article 14.5 of the License Agreement attached hereto and incorporated herein as Exhibit "A".

## **PARTIES**

6.      Plaintiff, KALIL DESIGN CONCEPTS, LLC, (hereinafter referred to as "Kalil" or "Plaintiff"), is a Florida Limited Liability Company whose two members are Antony Kalil and Margarette Kalil, both Florida residents and citizens.

7.      Defendant, THOMAS E. POWNALL, ("hereinafter referred to as "Pownall"), is an individual over the age of eighteen (18), is a resident and citizen of the South Carolina and is otherwise *sui juris*.

8.      Defendant, PRESTIGE COMPOSITE, LLC, ("hereinafter referred to as "Prestige"), is a South Carolina Limited Liability Company. Upon information and belief all of Prestige's members are residents and citizens of the State of South Carolina.

## BACKGROUND AND GENERAL ALLEGATIONS

9.      Plaintiff has been engaged in the boat manufacturing and design business for many years.

10.     Plaintiff is a Florida Limited Liability Company organized for the purpose of manufacturing, developing, designing, building and selling boats.  Its members are Anthony Kalil and Margarette Kalil, both Florida residents.

11.     Defendant Pownall owns a small business in Leesville, South Carolina, known as Prestige, that promotes itself as a boat builder.

12.     On December 29, 2020, Plaintiff, Pownall and Prestige entered into a License Agreement (hereinafter referred to as "Agreement") to make, use or sell methods, processes and/or products for the purposing of developing and commercializing boats.

13.     Pursuant to the Agreement, Plaintiff assisted in the delivery of the licensed personal property including all boat plugs, molds and other intellectual property.

14.     The plugs, molds, and other intellectual property which were delivered to Defendants pursuant to the Agreement are proprietary, unique, and specially manufactured.

15.     Per Article 2.3 of the Agreement, Plaintiff retained all ownership rights in all plugs and molds.  Article 2.3 of the Agreement states as follows:

> "2.3 <u>Retained Rights.</u>  Licensee hereby acknowledges that ownership of all Plugs and Molds for producing Products (including all Barracuda Plugs and Molds, as well as other Plugs and Molds owned by Licensor or Licensor's affiliate) and any preparatory or finishing treatments, or other modifications made by Licensee, on such Plugs and Molds, and any intellectual property based on such Plugs or Molds (as existing or as modified by Licensee) resides with Licensor.  For the avoidance of doubt, Licensee hereby agrees to assign and does hereby assign all rights to any intellectual property based on any modifications Licensee makes to the Plugs and Molds.

16.     Plaintiff has performed all of the requirements under the Agreement.

17.    All conditions precedent have been preformed by Plaintiff or waived by Defendants.

18.    Plaintiff has hired undersigned counsel and has promised to pay them a reasonable fee for the services rendered.

## <u>COUNT I</u><br><u>BREACH OF CONTRACT CLAIM OF PLAINTIFF</u><br><u>AGAINST ALL DEFENDANTS</u>

19.    The Plaintiff repeats and realleges Paragraph 1 through 18 as if set forth at length and incorporated herein by reference.

20.    Based upon the allegations alleged above, as well as the Agreement, the Defendants have received valuable plugs, molds, and other intellectual property from the Plaintiff. The Defendants have breached the Agreement in one or more of the following material ways:

a.    By failing to pay royalty fees as required by the Agreement;

b.    By failing to protect, preserve and maintain the plugs, molds and other intellectual property in accordance with the conditions of the Agreement;

c.    By damaging, alerting, modifying or otherwise changing the plugs, molds and other intellectual property in violation of the express terms of Articles 2.5, 6.3, 12.3 of the Agreement;

d.    By failing to return the plugs, molds and other intellectual property to Plaintiff following Defendants termination of the Agreement, as required by Articles 2.4 and 2.7 of the Agreement;

e.    By failing to secure insurance on all items;

f.      By failing to comply with Article 2.6 of the Agreement, requiring Defendants to file UCC notice publicly disclosing Plaintiff's ownership interest in the property; and

g.      By failing to pay the liquated damages agreed to in Articles 2.7 and 9.4 of the Agreement following Defendants early termination of the Agreement.

21.      All of Defendants' wrongful conduct described above occurred after the Plaintiff delivered a boat manufacturing and design business in the form of substantial time, labor, talent, capital, and valuable proprietary information all contributed by the Plaintiff.

22.      A valid Agreement existed between the Plaintiff and Defendants Pownall and Prestige.  Plaintiff materially performed in accordance with said Agreement and contributed the agreed upon consideration pursuant to the Agreement.

23.      Plaintiff has suffered damages as a result of Defendants' breaches.

24.      Based on the foregoing, Plaintiff is entitled to recover breach of contract damages from all Defendants, jointly and severally, in order to restore them to the position they would occupy had Defendants performed in accordance with the Agreement, together with liquidated damages for delay in delivering the licensed molds in the amount of $1,000.00 per day from the date Defendants terminated the Agreement.

**WHEREFORE**, Plaintiff demands a judgment for damages against the Defendants, plus costs, interest and whatever further relief this Court deems just and proper.

<u>**COUNT II**</u>
<u>**CONVERSION OF PLAINTIFF'S PERSONAL PROPERTY**</u>
<u>**BY ALL DEFENDANTS**</u>

25.      The Plaintiff repeats and realleges Paragraph 1 through 18 as if set forth at length and incorporated herein by reference.

26.     The Defendants have asserted full and complete possession over the Plaintiff's plugs, molds, equipment, inventory, and records contained in its boat manufacturing and design business.

27.     The Plaintiff has thousands of dollars of inventory and equipment which the Defendants have illegally and tortuously converted.

28.     Under Florida law, "in order to state a claim of conversion, one must allege facts sufficient to show ownership of said property and facts that the other party wrongfully asserted dominion of that property." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F.Supp.2d 1363, 1366 (M. D. Fla. 2013).

29.     The Defendants were not authorized to assert full and complete possession over the Plaintiff's property as described above.  This unauthorized conversion appears to be permanent in nature.

**WHEREFORE**, Plaintiff demands a judgment for damages against Defendants, plus costs, interest, and whatever further relief this Court deems just and proper.

<u>**COUNT III**</u>
<u>**FEDERAL DECLARATORY JUDGMENT**</u>

30.      Plaintiff realleges and reavers the allegations set forth in paragraph 1 through 18 above as if fully set forth herein.

31.      Plaintiff is uncertain as to its legal rights, damages owed and responsibilities under the Agreement following Defendants' wrongful actions in failing to pay royalties, failing to delivery Plaintiff's personal property pursuant to the Agreement and otherwise breaching the Agreement as alleged in Paragraph 20 above.

32.      Plaintiff requests this Court declare that Defendants must deliver Plaintiff's personal property to Plaintiff at Defendants' expense, determine the amount of liquidated

damages payable to Plaintiff by Defendants for failing to deliver Plaintiff's property as required by the Agreement and determine the amount of damages payable by Defendants for repairing damage done to Plaintiff's personal property while in Defendants' possession, custody or control.

  **WHEREFORE**, Plaintiffs request declaratory relief from this Court pursuant to Title 28 U.S.C.§ 2201 by ordering that Defendants' must deliver Plaintiff's personal property to Plaintiff at Defendants' expense, determine the amount of liquidated damages payable to Plaintiff by Defendants for failing to deliver Plaintiff's property as required by the Agreement and determine the amount of damages payable by Defendants for repairing damage done to Plaintiff's personal property while in Defendants' possession, custody or control.

Dated: December 28, 2022

Respectfully submitted,

                         *By: /s/ Donald J. Thomas*

                         Donald J. Thomas, Esq.
                         Florida Bar No. 834599
                         Georgia T. Garnecki, Esq.
                         Florida Bar No.  0068807

                         CBR Law Group, LLLP
                         Fifth Avenue Place
                         55 N.E. 5th Avenue
                         Suite 503
                         Boca Raton, FL  33432
                         Telephone: 561.609.1515
                         Facsimile: 561.368.0293
                         georgia@cbrlawgroup.com
                         paralegal@cbrlawgroup.com

                         *Attorneys for Plaintiff*

# EXHIBIT "A"

LICENSE AGREEMENT

A M O N G

KALIL DESIGN CONCEPTS, LLC., ANTHONY KALIL

A N D

THOMAS POWNALL, AND PRESTIGE COMPOSITE SC, LLC.

1



## LICENSE AGREEMENT

This License Agreement (hereinafter referred to as "Agreement") is entered into by and between KAIL DESIGN CONCEPTS, LLC (hereinafter referred to as "Licensor"), a Florida corporation having its office at 4034 SW Osprey Creek Way, Palm City, Florida 34990; and THOMAS POWNALL, and individual having a residence at 4751 Pondbranch RD, Leesville, SC, 29070 AND PRESTIGE COMPOSITE SC., a corporation of South Carolina having an office at 135 E Columbia Ave, Leesville, SC, 29070 (hereinafter referred to as "Licensee") (Licensor and Licensee are hereinafter each a "Party" and collectively referred to as the "Parties").

## WITNESSETH:

WHEREAS, Licensor will take all steps necessary to grant or cause to be granted to Licensee the "Licensed Patents" (as defined below), molds, plugs and Know-How (as defined below);

WHEREAS, Licensor desires to make its patent rights and know-how available for the development and commercialization of boats;

WHEREAS, Licensee represents itself as being knowledgeable in the manufacture and sale of boats;

WHEREAS, Licensee desires to obtain a world-wide license from Licensor as described herein to Make, Use or Sell methods, processes, and/or products that incorporate, use or exploit the Licensed Technology for the purposing of developing and commercializing such boats, and Licensor desires to grant such a license pursuant to the terms and conditions of this Agreement; and

WHEREAS, Licensee will be solely responsible for marketing and selling any boats in accordance with the grant of rights hereunder.

NOW, THEREFORE, in consideration of the above premises and the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I

### Definitions

As used in this Agreement, the following capitalized terms shall have the following respective meanings:

1.1 The term "Licensed Technology" shall mean and include all Licensed Molds, Patents and Know-How.

1.2 The term "Licensed Patents" shall mean (a) any provisional or regular patent applications identified in Exhibit 1, which is attached hereto and incorporated herein; (b) all inventions disclosed and/or claimed therein; (c) any patent(s) issued and patent application(s) filed during the Term which correspond to such patent applications and patents described by clause (a), including divisions, continuations and continuations-in-part based thereon, and reissues, reexaminations, patents of addition or importation, or other renewals or extensions thereof; and (d) any corresponding foreign patent applications, patents, or other equivalent foreign patent rights issuing, granted or registered thereon.

2

1.3 The term "Know-How" shall mean all technical information and materials provided to Licensee by or at the direction of Licensor, including without limitation plugs, molds, technology, data, designs, floor plans, specifications, techniques, software, instrumentation, devices, constructs, inventions, practices, methods, knowledge, know-how, trade secrets, and methods of manufacture, which are necessary or useful to Make, Use, or Sell fiberglass-hulled boats. For the avoidance of doubt, Know-How includes all Barracuda Plugs, Molds, and Designs.

1.4 The term "Barracuda Plugs and Molds" shall mean the 238 Hull Mold, 238 Console Mold, 238 Deck Mold, 238 Head Door Mold, 238 Head Pan Mold, 238 Coaming Mold, 238 Instrument Panel Plug, 188 Hull Mold 1, 188 Hull Mold 2, 188 Hull Master, 188 Deck Mold 1, 188 Deck Mold 2, 188 Deck Master, 188 Livewell Mold, 188 Seat Mold, 188 Console 1, 188 Console 2, 188 Step Doen Console 1, 188 Step Down Console 2, 188 Step Down Pan Mold, 188 Head Door Mold located at the Storage Lot, Palm City, Florida 34990, including any preparatory or finishing treatments, or other modifications made by Licensee, on the aforementioned plugs or molds after the Effective Date of this Agreement.

1.5 The term "Mold" shall mean the structure to build a part.

1.6 The term "Plug" shall mean the structure required to build a Mold.

1.7 The term "Product" shall mean a Licensed Product or Developed Product.

1.8 The term "Licensed Product" shall mean any product, material, composition, or method, the manufacture, use, or sale of which would constitute, but for the license granted to Licensee pursuant to this Agreement, an infringement of a Valid Claim of Patent Rights (infringement shall encompass, but is not limited to, direct infringement, contributory infringement, or inducement to infringe).

1.9 The term "Developed Product" shall mean any product (*e.g.*, fiberglass-hulled boat or a portion thereof), material, composition, or method which are in material part first identified, discovered, or made through the use of the Know-How delivered hereunder. The term "Developed Product" excludes Licensed Product. For the avoidance of doubt, the Barracuda Plugs and Molds are not Licensed Products or Developed Products, and Licensee is not licensed to sell the Barracuda Plugs and Molds.

1.10 The term "Tooling" shall mean the equipment necessary to build composite parts, and includes without limitation Plugs, Molds, assembly fixtures, drilling and cutting jigs, and masking and grinding fixtures.

1.11 The term "Built" shall mean the production of a Product, and in the case of a boat, the Product is Built when it is issued a serial number (hull identification number (HIN)) by the appropriate government agency.

1.12 The term "Make, Use or Sell" shall mean to develop, produce, have produced, make, have made, manufacture, have manufactured, use, have used, offer for sale, have offered for sale, sell, have sold, rent, have rented, lease, have leased, import and have imported a Product.

1.13 The term "Affiliate" shall mean any present or future companies, corporations, partnerships, joint ventures, business trusts or other business entities organized under the laws of any nation (a) with respect to which: (i) at least fifty percent (50%) in value of the total equity interests, (ii) at least fifty percent (50%) of the total combined voting power of all classes of shares entitled to vote, or (iii) at least fifty percent (50%) of the profits interest in the case of a partnership, joint venture or other non-stock entity, is directly or indirectly under the control of Licensee, or (b) with respect to which Licensee has effective control, directly or indirectly. "Control" shall mean the possession of the power to direct or cause the direction of the management and the policies of an

3

entity, whether through an ownership interest or by contract or otherwise. The term "Licensee" wherever used herein shall include any Affiliate of Licensee.

1.14 The terms "Commercialize" and "Commercialization" shall mean the Making, Using, or Selling, licensing or other use by Licensee of the Product under such circumstances as may be permitted by applicable international, federal, and state laws and regulation.

1.15 The term "Valid Claim" shall mean, in the country of manufacture or sale, (a) a claim of any issued and unexpired patent within the Licensed Patents that (i) has not been permanently revoked, nor held unenforceable, unpatentable or invalid by a decision of a court or other governmental agency of competent jurisdiction that is unappealable or unappealed in the time allowed for appeal, and (ii) has not been lost through an interference, reexamination or reissue proceeding; or (b) a pending claim of a pending patent application included in the Licensed Patents.

1.16 The term "Cover(s)" or "Covered" shall mean that a boat, process, material, composition, or other product or portion of a product would infringe a Valid Claim in an issued patent (or in the case of a Valid Claim in a patent application, would infringe such Valid Claim if it was in an issued patent) but for the exclusive license granted to Licensee hereunder.

1.17 The term "Improvement" shall mean any invention, discovery, advancement, development, improvement and/or modification of or within the Licensed Technology, including, but not limited to, any modification of a product, method, process, or other invention that is described in a Licensed Patent in which the modification would, if unlicensed, infringe one or more claims of the Licensed Patents of Sections 1.2(a)-(d). For the avoidance of doubt, any modifications made to the Barracuda.

1.18 The term "Effective Date" shall mean the date the last Party hereto has executed this Agreement.

1.19 The term "Licensed Territory" shall mean world wide with the exception of China.


ARTICLE II

Grant of License

2.1 Scope of License. Licensor will take all steps necessary to grant or cause to be granted to Licensee the an exclusive non-exclusive license under the Licensed Technology to Make, Use or Sell Products Worldwide

2.2 Right to Sublicense. Licensee may not sublicense to third parties within the scope of the license granted herein.

2.3 Retained Rights. Licensee hereby acknowledges that ownership of all Plugs and Molds for producing Products (including all Barracuda Plugs and Molds, as well as other Plugs and Molds owned by Licensor or Licensor's affiliate) and any preparatory or finishing treatments, or other modifications made by Licensee, on such Plugs and Molds, and any intellectual property based on such Plugs or Molds (as existing or as modified by Licensee) resides with Licensor. For the avoidance of doubt, Licensee hereby agrees to assign and does hereby assign all rights to any intellectual property based on any modifications Licensee makes to the Plugs and Molds.

2.4 The molds will used and stored at Licensee's facility. Licensor shall have the unrestricted right to request and immediately receive the return of any or all of its molds at any time

4

and for any reason. Upon such request Licensee shall make the molds available for pickup by Licensor or its designees within fourteen (14) days.

2.5  Molds will solely belong to Licensor. Molds will not be encumbered in any way. No parts, or sections of parts will be made from Licensor's molds for any reason other than for BARRACUDA projects. No splashes or copies of any of Licensor's small parts or plastic parts will be made for any reason other than for BARRACUDA projects.

2.6  Licensee shall file Uniform Commercial Code (UCC) Filings listing Licensor as owner and lienholder of all physical Plugs, Molds, and Boats belonging to Licensor.

2.7  The parties expressly agree that the Molds are the exclusive property of Licensor and are subject to being returned to Licensor at any time, on no more than 7 days notice. Given the potential damage to Licensor by any delay in returning its molds after any demand, (in writing, by e-mail or in person), the parties stipulate that should any demand for the return of the molds be refused, or delayed, in other than undamaged good working order, Licensor shall be entitled to liquidated damages of $1,000 per day from Licensee for every day delay in returning the molds or replacing them if damaged.

2.8   During the Term of this Agreement Licensee shall maintain "all risk" Builder's Risk Insurance and/or Contents Insurance as appropriate covering all materials, machinery, parts and equipment related to the Boat and Licensor's Tooling at the Licensee's facilities. Such coverage shall be written in the amount of the Basic Purchase Price of the Boats estimated to be under Construction at any one time and the agreed values in the case of Licensor's furnished Tooling and equipment, if any. The Builders Risk policy shall include coverage for launching and sea trials. Licensor shall report the value of any Tooling and furnished equipment at the Licensee's facilities to Licensee on a bi-monthly basis for submission to its insurer.  Licensee's Risk/Contents insurance policy shall include both the Licensee and Licensor as insureds, and shall list both as loss payees, as their interests may appear.


ARTICLE III

Patents and Improvements


3.1  Patent Prosecution.  Licensor will control the conduct, preparation, filing and prosecution of the Licensed Patents and will maintain any patents issued thereon at Licensor's sole discretion and expense.

3.3  Improvements: Ownership.  Title to any and all Improvements developed solely or jointly during the Term of this Agreement, through the efforts of the employees, agents, independent contractors, or joint venture partners of one or both Parties shall vest solely and exclusively in Licensor. Licensee hereby agrees to assign and does hereby assign all rights to Improvements to Licensor that are conceived or developed during the Term of this Agreement. Improvements are not included within the Licensed Technology.

3.5  Licensee Improvements: Reporting.  Licensee shall promptly submit to Licensor during the Term of this Agreement all available information and Know-How on any Improvements, whether patentable, copyrightable or not, now or hereafter found, discovered, invented, owned, or controlled by Licensee.

5

ARTICLE IV

Royalties and Other Consideration

4.1 Royalty. Licensee shall pay Licensor during the term of this Agreement a royalty of one thousand U.S. Dollars ($1,000) on each 188 Built by Licensee, one thousand, five hundred U.S. dollars ($1,500) on each 208 Built by Licensee, two thousand U.S. dollars ($2,000) on each 238 Built by Licensee, three thousand U.S. dollars ($3,000) on each 258 Built by Licensee. Additional models will have royalty agreements structured as they become available. Only one (1) royalty shall be payable on a Product, regardless of the number of Valid Claims or the number of patent applications and patents within the Licensed Technology, if any, under which such Product has been Built, Made, Used or Sold.

4.3 Basis of Royalty Obligation. Royalty payments to be paid at the applicable rate(s) hereunder shall be paid on a Product-by-Product basis within 7 days of completion of each boat.

4.4    Sublicenses. Licensee shall not have the right to sublicense.

ARTICLE V

Reports and Payments

5.1 Royalty Reports and Payments. Licensee agrees that Licensor shall receive within seven (7) days after the end of each quarter of each calendar year:

(a)    a complete and accurate royalty report showing the information and basis on which such amounts have been calculated, including disclosure of at least the following information:

i.    the number of Products Built by Licensee;

ii.    the number of Products sold in each country;

iii.    total billings for such Products;

iv.    the total amount due Licensor thereon, or, if no amounts are due to Licensor for any reporting period, a statement to such effect; and

(b)    payment of amounts due to Licensor pursuant to this Agreement, including, but not limited to, amounts pursuant to Articles IV and VI.

5.2 Currency. All amounts payable by Licensee shall be paid in U.S. Dollars..

5.3 Taxes. Licensee is responsible for all taxes (other than net income taxes), duties, import deposits, assessments and other governmental charges, however designated, which are now or hereafter will be imposed by an authority in or for the Territory, (a) by reason of performance by Licensor of its obligations under this Agreement, or the payment of any amounts by Licensee to Licensor under this Agreement; (b) based on the Patent Rights or Making, Using, or Selling of Products; or (c) which related to the import of Products into the Territory.

5.4 No Deductions. All payments to be made by Licensee to Licensor under this Agreement

6

represent net amounts Licensor is entitled to receive, and will not be subject to any deductions or offsets for any reason whatsoever. If such payments become subject to taxes, duties, assessments or fees of any kind levied in the Territory, such payments from Licensee will be increased to the extent that Licensor actually receives the net amounts due under this Agreement.

5.5 <u>Report on Termination.</u> Licensee also agrees to make a notarized written report to Licensor within ninety (90) days after the expiration or termination of this Agreement, stating in such report the amounts payable hereunder and the basis therefor not previously reported to Licensor. In the event of a termination prior to expiration of the Term, Licensee shall also continue to make annual reports pursuant to the provisions of this Agreement covering sales, uses, or production and the applicable royalties and other amounts payable hereunder for Products made during the Term, but not used or sold until after termination thereof, until such time as all such makings, uses or sales shall have terminated. Concurrent with the submittal of such post-expiration or post-termination report, Licensee shall pay Licensor all applicable royalties and other amounts payable hereunder.

5.6 <u>Books and Records.</u> Licensee shall keep full, true, clear and accurate records and books of account with respect to the Products subject to royalty or other payments hereunder. Said records and books of account shall be kept by Licensee at the usual places where its like records and books are kept and shall be retained for a period of five (5) years following the end of the calendar year to which they pertain. Licensor shall have the right through its designated representatives to examine, make copies of and audit at all reasonable times all such records and books of account and such other records and accounts as may under recognized accounting practices contain information reasonably bearing upon the amounts payable to it under this Agreement. Prompt adjustment shall be made by the proper party to compensate for any errors or omissions disclosed by such examination or audit. In the event the examination or audit results in a discrepancy in the correctness of the payments due under this Agreement in an amount in excess of five percent (5%) of the payments due Licensor for any single quarter audited, Licensee shall reimburse Licensor for all reasonable out-of-pocket costs and fees associated with such examination or audit, and all reasonable out-of-pocket costs and expenses required to collect the amount underpaid, including (but not limited to) reasonable attorneys' fees incurred in connection therewith. Neither such right to examine and audit nor the right to receive such adjustment shall be affected by any statement to the contrary appearing on checks or otherwise, unless such statements appear in a letter, signed by the party having such right and delivered to the other party, expressly waiving such right. Notwithstanding the foregoing, Licensor may require Licensee to furnish any other information reasonably requested to enable Licensor to evaluate Licensee's performance under this Agreement.

5.7 <u>Delinquent Payments.</u> Payments provided for in this Agreement shall, when overdue, bear interest at the then existing prime rate at Citibank of New York (or its successor) plus ten percent (10%) per annum until paid, but in no event shall such interest exceed the usury limit, if any, as may exist from time to time in the State of Florida.

A R T I C L E   V I

<u>Development and Commercialization</u>

6.1 <u>Licensee to Commercialize.</u> Licensee shall undertake to use commercially reasonable

7

and diligent efforts to, directly or through a sublicensee, develop or Commercialize one or more Products within the Licensed Technology and from the Barracuda Plugs and Molds. Licensee will prepare Barracuda Plugs and Molds, and engineer and develop all Products at Licensor's expense and approval. Licensee shall build all Products to Licensor's specifications. In the case of boats, Products must comply with National Marine Manufacturer's Association (NMMA®) Certification, as well as any applicable laws in selling Territories. Licensee shall maintain its proven standards of Quality, Safety, and Integrity. All new models and additional molds for new models will be paid for and owned by Licensor. Licensee is free to bid on these plugs and molds. Licensee will not own or have any claim to any Barracuda Molds, Plugs, Designs, or Know-How

6.2 Disclosure and Delivery of Know-How. Within a reasonable time after execution of this Agreement, Licensor shall make available to Licensee the Know-How. Licensor, however, owns the materials in which the Know-How is embodied, including, but not limited to, all Barracuda Plugs and Molds, and the Know-How shall be considered confidential information of Licensor. Licensee will transport all Barracuda Plugs and Molds from Palm City, Florida 34990 to Licensee's facilities located at 135 E Columbia Ave, Leesville, SC, 29070 at Licensee's expense. Ownership of all Know-How, including all Plugs and Molds, shall remain with Licensor. Licensee shall have the right to confer with Licensor for such reasonable periods and at such times that are mutually convenient, and as approved by Licensor. At no cost to Licensee, Licensor will collaborate with Licensee's research and development personnel to Commercialize one or more Products from the Barracuda Plugs and Molds.

6.3    Any use of the molds other than for the express production of boats shall constitute an infringement of Licensor's intellectual property rights entitling Licensor to immediate injunctive relief without need for any bond.

6.4 Marketing Requirements. Licensee shall conduct marketing of Products at Licensee's expense, including point-of-purchase (POP) materials, brochures, and publications.

6.5 Printed Materials. Any brochures used by Licensee to market Products will be stand-alone brochures. Licensor will approve the layout and copy of all brochures, publications, and printed materials to be used by Licensee to market Products.

6.6 Licensor's Website. Licensor's website shall be maintained by Licensor for Licensed Territories.

6.7 Sales Management and Employment. Licensor's relationship with Licensee will introduce Licensee into numerous dealers in the United States (subject to Article 2.1). Licensee reserves the right to sell any products that are not Products of this Agreement into these dealers with no royalty due to Licensor, and no sales commission will be due to Licensor or its employees for establishing these relationships. Licensee will price Products competitively with other products in similar size models. Licensee shall fulfill orders for Products fairly between all dealers, prioritizing sales on a first in-first out basis. Licensee shall not make the sale of Products conditional upon the purchase of Licensee's other products or service; however, sharing truckloads for sake of efficiency is permitted

A R T I C L E   V I I

Protection of Patents

8

7.1 <u>Protection.</u> Licensor agrees where economically justified and within reasonable limits to protect the Licensed Technology from infringement or misappropriation by third parties and to prosecute such infringers or defendants, but the decision to undertake such protection shall be in the sole discretion of Licensor, and Licensor's decision as to whether any such action shall be taken by it shall be accepted by Licensee. Each Party agrees to cooperate fully with the other Party in protection of the Licensed Technology, including by joining as a party to any proceeding if required by applicable law.

7.2 <u>Notice of Infringement; Third Party Infringement.</u> Licensor and Licensee shall each give immediate written notice to the other of any infringement of a Patent Right or misappropriation of Know-How by any third party as may come to its knowledge. Licensee shall not so settle or compromise such suit or action without the prior written consent of Licensor. In the event Licensee shall recover profits and/or damages from said infringer or defendant, Licensee agrees to pay to Licensor fifty percent (50%) of any amounts paid to it by said infringer or defendant after deducting any of its expenses, including costs and legal fees incurred in such litigation.

7.3 <u>Notice of Infringement; Claim of Licensee Infringement.</u> Licensee shall promptly advise Licensor in writing of any notice or claim of any infringement and of the commencement against it of any suit or action for infringement of a third party patent made or brought against Licensee and based upon the use hereunder by Licensee of the Licensed Technology. Licensee shall have the right either to:

      (a)     request that Licensor enter into negotiations with such third party to obtain rights for Licensee under the third party patent; or

      (b)     request that Licensor defend such suit or action at Licensor's expense.

7.4 <u>Reasonable Assistance.</u> Licensor is neither obligated to enter into negotiations with such third party to obtain rights for Licensee under the third party patent nor obligated to defend such suit or action. If Licensor, at its sole discretion, elects to enter into negotiations with such third party to obtain rights for Licensee under the third party patent or if Licensor, at its sole discretion, elects to undertake at its own expense the defense of any such suit or action to the extent that the alleged infringement is based upon such use hereunder of the Licensed Technology, Licensee shall render to Licensor all reasonable assistance that may be required by Licensor in the negotiations or in the defense of such suit or action. Licensor has the primary right to control the defense of any such suit or action by counsel of its own choice, and Licensee shall have the right, at its own expense, to be represented in any such suit or action in respect of which Licensee is a defendant by counsel of its own choice, subject to Licensor's right of control. Notwithstanding the foregoing, if Licensor has not within ninety (90) days (or such lesser period of time as is necessary to avoid entry of a default judgment against Licensor or Licensee) from the date of receipt of a request from Licensee under Section 7.3 either entered into negotiations with such third party to obtain rights for Licensee under the third party patent or initiated legal action to defend such suit, it shall, upon written request of Licensee, grant to Licensee the right to enter such negotiations or defend such suit. Licensee shall not settle or compromise any such suit or action without the prior written consent of Licensor, which consent shall not be unreasonably withheld.

## ARTICLE VIII

### Disclaimer of Liability and/or Warranty

8.1    <u>No Warranty.</u> Nothing in this Agreement shall be construed as:

(a)     a warranty or representation by Licensor as to the validity or scope of any Licensed Technology; or

(b)     a warranty or representation that anything Made, Used or Sold under any license granted in this Agreement is or will be free from infringement of patents, copyrights, and/or trademarks of third parties; or

(c)     an express or implied warranty of merchantability or fitness for a particular purpose.

8.2 No Damages. Licensor shall exercise reasonable care in verifying the accuracy of information provided under this Agreement, but Licensor shall not be liable for any damages arising out of or resulting from any information made available hereunder or of the use thereof, nor shall it be liable to Licensee for indirect, special, consequential or punitive damages under any circumstances.

8.3 No Warranty of Quality or Usefulness. Licensor shall have no responsibility for the ability of Licensee to use such information, the quality or performance of any process or any Product produced by Licensee with the aid of such information, or with respect to claims of third parties arising from Licensee's use of such information.

ARTICLE IX

Term; Termination

9.1 Term. (a) The Term of this Agreement ("Term") shall commence on the Effective Date and shall continue for 2 three years.

9.2 Termination for Cause; Insolvency. If Licensee shall determine that it intends to declare itself insolvent or file for bankruptcy or reorganization, it shall give immediate written notice to Licensor. Failure to give such notice shall cause immediate termination of this Agreement, and all rights of Licensee in the Licensed Technology shall automatically revert to Licensor. If Licensee shall become bankrupt or insolvent; if the business or any assets or property of Licensee shall be placed in the hands of a receiver, assignee or trustee, whether by the voluntary act of Licensee or otherwise; if Licensee institutes or suffers to be instituted any procedure in bankruptcy court for reorganization or rearrangement of its financial affairs; or if Licensee makes a general assignment for the benefit of creditors; then this Agreement shall immediately terminate, and all rights of Licensee in the Licensed Technology shall automatically revert to Licensor. Upon occurrence of any of the foregoing events, Licensee shall give immediate written notice thereof to Licensor.

9.3 Default. Upon any breach or default under this Agreement by Licensee, Licensor may give written notice thereof to Licensee, and Licensee shall have fourteen (14) days thereafter to cease production and shrink wrap Plugs and Molds and make ready for pickup by Licensor.  Licensee will assist Licensor in loading plugs and molds for transport.

9.4 Commercialization Rights Upon Termination. Upon termination hereof, all rights of Licensee in the Licensed Technology (including the possession of Know-How, such as the Barracuda Molds and Plugs or other Plugs and Molds belonging to Licensor as existing at the time of this Agreement or as modified by Licensee) shall revert to Licensor, and Licensee agrees to execute appropriate assignments of such rights to Licensor; and further, Licensee agrees to discontinue the Commercialization of the Licensed Technology. Within fourteen (14) business days of termination of this Agreement by Licensor, Licensee shall return all Know-How, including but not limited to all Barracuda Molds and Plugs, to Licensor at Licensor's expense.  Within fourteen (14)

business days of termination of this Agreement by Licensee, Licensee shall return all Know-How, including but not limited to all Barracuda Molds and Plugs, to Licensor at Licensee's expense.

9.5  <u>Provisions Surviving Termination.</u> Article XIII of this Agreement shall survive expiration or termination of this Agreement.

## A R T I C L E   X

### Representations and Warranties

10.1 <u>Warranty to Title.</u> Licensor represents and warrants that Licensor will take all steps necessary to grant or cause to be granted to Licensee the Licensed Technology and has the legal power and authority to extend the rights granted to Licensee pursuant to this Agreement, and that it has not assigned, licensed, pledged or compromised the Licensed Technology or made any commitments or offers inconsistent with or in derogation of the rights created by this Agreement.

10.2 <u>Power and Authority.</u> Licensee represents and warrants that it has full power, authority and ability to enter into this Agreement and to carry out the transactions contemplated hereby.

10.3 <u>Compliance with Laws.</u> Licensee represents and warrants that it will comply with all applicable laws and regulations, including without limitation, all Canadian and United States laws and regulations controlling the export of commodities and technical data. Licensee will be solely responsible for any violation of such laws or regulations by Licensee or its sublicensee, and it will defend and hold Licensor harmless in the event of any legal action of any nature occasioned by such violation.

## A R T I C L E   X I

### Agency/Partnership/Use of Name

11.1 <u>No Agency.</u> Neither party shall be deemed to be an agent of the other party as a result of any transaction under or related to this Agreement, and shall not in any way pledge the other party's credit or incur any obligations on behalf of the other party.

11.2 <u>No Partnership.</u> This Agreement shall not constitute either a partnership or a joint venture, and neither party may be bound by the other to any contract, arrangement or understanding except as specifically stated herein.

11.3 <u>Use of Name and Logo.</u> Except as provided in this Article and in Articles VI and XII, or to the extent required to comply with applicable laws and regulations, without prior written consent obtained from Licensor, Licensee (including any Affiliate) shall not use for purposes of sales, advertising, marketing, marking of goods, promotion to investors, press releases or other publicity, *etc.*: (i) the name of (or any other information which would identify) Licensor or any corporation which is controlled by the same persons who control Licensor ("Other Corporation"); (ii) the names of trustees, directors, officers, or employees of Licensor or an Other Corporation; or (iii) any trademarks (or adaptations thereof) of Licensor or an Other Corporation.

## A R T I C L E   X I I

### Marking and Modification

11

12.1 Licensee agrees to apply or have applied to all articles and to all containers containing Products manufactured by it or any sublicensee(s) under this Agreement such patent, trademark, and copyright notices as may be required by the laws of the territories where manufactured or as may reasonably be requested by Licensor.

12.2 Products sold in licensed territories will be labeled as Barracuda.

12.3 All Know-How, including Plugs, Molds, designs, *etc.* are the intellectual property of Licensor. Licensee shall not alter designs, molds, or boats without prior written consent of Licensor's to create new models during or after the Agreement terminates. All future new model designs, colors, floor plans, updates, and specifications are to be determined by Licensor.

## A R T I C L E   X I I I

### Nondisclosure of Confidential Information

During the Term, and for a period of five (5) years thereafter, Licensee agrees to keep confidential by not disclosing to any third party any information (i) relating to this Agreement, including the financial terms and conditions thereof, or (ii) transmitted to Licensee by Licensor or at Licensor's direction, including the Know-How, Licensee may use this information solely as necessary for complying with the terms and conditions of this Agreement. The obligations of non-disclosure and non-use will not apply when and to the extent such information:

(a) becomes part of the public domain through no action or fault of Licensee; or

(b) was in Licensee's possession before disclosure by Licensor, as demonstrated by Licensee's written records, and was not acquired, directly or indirectly from Licensor; or

(c) was received by Licensee from a third party having a legal right to transmit such information; or

(d) is required to be disclosed under law or federal regulation provided that Licensee provides adequate notice to Licensor of the proposed disclosure in order to permit Licensor to determine whether to protect this information from such disclosure as applicable, *e.g.*, a protective order, and provided further that such disclosure is only of the scope necessary to comply with the law or federal regulation. .

## ARTICLE XIV

### Miscellaneous

14.1 Captions. The captions herein are for convenience only and shall not be deemed to limit or otherwise affect the construction hereof.

14.2 Notices. Any notice or other communication hereunder must be given in writing and (a) delivered in person, (b) transmitted by telefax or other telecommunications mechanism, (c) mailed by certified or registered mail, postage prepaid, receipt requested, or (d) sent by overnight delivery with charges prepaid and receipt acknowledged, as follows:

If to Licensor, addressed to:

12

Anthony Kalil

4034 SW Osprey Creek Way

Palm City, Florida 34990

Phone: (407) 399-9287


If to Licensee, addressed to:

Thomas Pownall

135 E Columbia Ave,

Leesville, SC 29070

Phone: (803)237-7249

or to such other address or to such other person as the party shall have last designated by such notice to the other party. Each such notice or other communication shall be effective (i) if given by mail, three (3) days after such communication is deposited in the mails with postage prepaid, addressed as aforesaid, or (ii) if given by telecommunication or any other means, when actually received at such address.

14.3 <u>Assignment.</u> This Agreement, in whole or in part, shall not be assignable by Licensee without prior written consent of Licensor (unless to a successor entity to Licensee by merger, acquisition or other non-bankruptcy reorganization), and any attempted assignment without such consent shall be void. Licensor may assign this Agreement.

14.4 <u>No Waiver.</u> The failure of either party to enforce at any time any of the provisions of this Agreement, or any rights in respect thereto, or to exercise any election herein provided, shall in no way be considered to be a waiver of such provisions, rights, or elections, or in any way to affect the validity of this Agreement. The exercise by either party of any of its rights herein or any of its elections under the terms or covenants herein shall not preclude either party from exercising the same or any other rights it may have under this Agreement, irrespective of any previous action or proceeding taken by either party hereunder.

14.5 <u>Choice of Law and Jurisdiction.</u> This Agreement shall be governed and construed in accordance with the laws of the State of Florida, U.S.A. applicable to contracts made in such State (without regard to conflicts of law doctrines), including the Florida Uniform Commercial Code. The rights and obligations of the Parties under this Agreement shall *not* be governed by the United Nations Convention on Contracts for the International Sale of Goods (CISG). The Parties agree that, in the event of litigation, action will be in Florida.

14.6 <u>Severability.</u> If any provision of this Agreement is judicially determined to be void

13

or unenforceable, such provision shall be construed to be severable from the other provisions of this Agreement, which shall retain full force and effect.

14.7 <u>Further Acts.</u> The Parties hereto agree promptly to execute, forward, or otherwise provide all documents and material necessary or desirable to effectuate this Agreement.

14.8 <u>Entire Agreement.</u> Except for a pre-existing confidentiality agreement (if any), the terms and conditions herein contained constitute the entire agreement between the Parties and shall supersede all previous communications, either oral or written, between the Parties hereto with respect to the subject matter hereof. No agreement or understanding bearing on the same shall be binding upon either party hereto unless it shall be in writing and signed by the duly authorized officer or representative of each of the Parties and shall expressly refer to this Agreement.

14.9 <u>Successors and Assigns.</u> This Agreement shall be binding on and shall inure to the benefit of the Parties hereto, and their respective successors and assigns.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed in multiple originals by their duly authorized representatives.

KALIL DESIGN CONCEPTS, INC.

By: _____

Print Name: _Anthony KALIL_

Title: _President_

Date: _12/29/2020_

PRESTIGE COMPOSITES, INC.

By: _____

Print Name: _Thomas Pownall_

Title: _____

Date: _____

THOMAS POWNALL, Individually

14

By: _____

Print Name: _____

Date:_____

## EXHIBIT 1

Licensed Patents

U.S. Trademark "BARRACUDA" for Class 012 Boats. Serial Number 78811036

U.S. Patent Serial Number 7,055,451 FasTab Hull

U.S. Patent Serial Number 9,403,581 Privacy Enclosure

U.S. DVH 0475 Visual Trademark for Barracuda Style and Trade dress